CROCKETT v. McCLURE COMPANY.

Opinion delivered October 28, 1918.

1.  APPEAL AND ERROR—PRESUMPTION ON DIRECTION OF VERDICT.— Where the trial court has directed a verdict, the testimony on appeal will be given its strongest probative force in favor of the party against whom it was directed.

2. SALE—PERFORMANCE—DIRECTION OF VERDICT.—In an action for
the purchase price of a silo, the court properly directed a verdict for
the seller where the contract provided that the vendee should notify
the seller if any part should be missing, and the evidence either failed
to show that any sufficient notice of a deficiency was given or showed
that the deficiency was supplied.

Appeal from Woodruff Circuit Court, Southern District; *J. M. Jackson,* Judge; affirmed.

### STATEMENT OF FACTS.

On May 16, 1914, the McClure Company, a corporation of Michigan, sold to J. Smith Crockett of Hunter, Arkansas, a silo 20 feet in diameter and 40 feet high. The contract was evidenced by a written order in which Crockett requested the company to ship to him at Hunter, Woodruff County, Arkansas, the silo which is specifically described in the order. The order recited: "If, upon receipt of this silo, any part or parts to be lacking or defective, I will immediately notify the McClure Co., and allow reasonable time for replacement of such shortage or defective parts. Failure to comply with the foregoing will be the acceptance of the silo on my part. This order embodies all, and the only agreement between the parties hereto and is not subject to countermand after it has been accepted in writing and must be sent to my address as given below."

The order recited that the purchase price was $493.05, to be paid in four equal installments, December 1, 1914, March 1, 1915, December 1, 1915, and March 1, 1916. The silo was shipped to Crockett June 15, 1914. On June 17th the company wrote Crockett advising him of the shipment of the silo and inclosing an invoice and check slips, and stated: "When your silo arrives, take these check slips to the car with you, and when receiving your silo you may check each article as shown on the slips and be sure your silo is complete." On receiving this letter Crockett took the slips to the car and checked the stuff as delivered. He got every piece called for in those slips.

The slips describing the material under the heads of "QUANTITY" and "DESCRIPTION" had, among other things 1 Door Frame 20 by 40 feet extra, and also this recital: "QUANTITY" "DESCRIPTION" "20 by 40." Then under these heads follows the list of materials for the building of the silo. On receiving the materials, Crockett commenced to build the silo. He put in a concrete base or bottom 20 by 40 and a scaffold for building the silo at a cost of about $50. When he attempted to put the silo together, he found that the material received was for a 16 by 40 silo and that it was impossible to erect a 20 by 40 silo with additional material. The party whom he employed to erect the silo stated that it was not possible to erect a 20 by 40 silo out of staves that were made for a 16 by 40 silo. "The circle wouldn't be the same."

On July 21, 1914, Crockett wrote the company advising it that he did not have staves enough to build a 20 by 40 silo. On July 24, 1914, in answer to this letter the company wrote Crockett that it had shipped him sufficient material to make up the shortage. On the 25th of July, 1914, the company shipped to Crockett a carload of material for a silo. The bill of lading for this shipment specifies as follows:

"Carload of Lumber.
"Carload of Silos K. D.
"Carload of Silo Material (sawed to shape).
"Silos K. D., in Bdls. or Crts.
"Bdls. Staves.
"Sections of Silo Door Frame.
"Bdls. of Iron.
"Box of Iron Castings and Iron."

The testimony shows conclusively that this shipment arrived at the station at Hunter, Arkansas, and that Crockett knew of that fact. On the 5th of August, 1914, Crockett wrote a letter to the agent of the company who negotiated the sale with him, in which he stated: "I really won't need this silo this year, and I don't feel that

I am able to build and not use it. The drouth has cut the corn yield, and I won't be able to use it. Of course, I wish I had gotten your silo up and filled, and would have done so (as we began work on it first) if the pieces had not been short, which of course stopped the work Then we built the other one, and I have been filling it. I want you to use your influence that I may store this silo away, take insurance on it payable to the McClure Company and make these payments the same as now except postpone them one year. I want to do the clean thing, but you know as well as I, if all the silo had come at once it would now be up and partly filled." This letter was forwarded to the Company, and the company replied to the letter on September 5th, agreeing to extend the payments one year and inclosed with the letter, notes covering the payments to be made at the extended dates for Crockett's signature. He did not sign the same. Correspondence followed between them in which Crockett was urged to make a settlement, and he refused. Among the letters received from him by the company was one of September 15, 1914, in which he states: "Your letter of the 5th received. Will say in reply that the notes are not drawn up according to my contract. My payments were to be paid in March and December. You will see by the inclosed notes that these read to be paid in January, September and March. If you will kindly look up the old order and fill out the notes as per our latest agreement, I will gladly sign them and return them to you. Thanking you for your leniency in this matter, I beg to remain, etc."

Another letter to the company on November 5, 1914, in which he states: "Owing to the desperate financial condition of the South, would like to know if there is any way I could honorably and uprightly ship back to you the silo which I bought from you last spring. I would be willing to pay the freight, drayage, and the agent's commission. If you will recollect we have had quite a little trouble with this silo, as it was short some of the pieces, and could not build or finish building it after we had erected the foundation and scaffold. The financial condi-

tion here is in such a condition that I fear to keep it, as it would only mean trouble later on. Please let me hear from you just how you feel about this proposition. You have a fine silo and I would certainly buy a McClure if at any future time I should be in the market for another.''

While the company was endeavoring to have Crockett settle, its agents, Loer & Hoetzel, wrote to the company February 1, 1915, in which they stated that they had been out to Crockett's place to settle with him, and while there they had checked over the silo and found that it was a 16 by 40 silo, and that Crockett objected to paying for a 20 by 40 silo when he only got a 16 by 40. In this letter they state that the ''extra staves are still at the station at Hunter, but the question is, could he use the door frame he has with the extra staves and make a 20 by 40 silo out of it?'' A copy of this letter was also sent to Crockett.

The company sent its agent to Crockett to make a settlement, and he refused claiming that the company had violated its contract in not sending him a 20 by 40 silo; that his door frame was for a 16 by 40 silo. The company, in order to close the matter, agreed to a settlement at the price of a 16 by 40 silo, or to furnish a new silo door frame for a 20 by 40 silo, and that the settlement be made upon the terms previously agreed, but this offer Crockett refused. The company instituted this action against Crockett for the price of the silo set up by the contract, and Crockett answered, denying that he was indebted to the company and averring that the Company had not complied with its contract.

The court instructed the jury to return a verdict in favor of the company for the price of the silo. From the judgment based upon the verdict in the sum of $631 in favor of the company, Crockett brings this appeal.

*Roy D. Campbell,* for appellant.

1. The court erred in directing a verdict. There was no contract by which defendant agreed to accept the smaller silo and pay for it. Plaintiff here attempts to

substitute an entirely new cause of action for the one originally set out in the original complaint. 102 Ark. 25.

2. Plaintiff did not ship the silo ordered and defendant never agreed to pay for the one shipped. The matter should have been left to a jury.

*C. F. Greenlee,* for appellee.

1. The court properly directed a verdict. Defendant accepted the silo. Under the contract it was his duty to *immediately* notify appellee of any defects or parts lacking and allow a reasonable time to replace shortage or defective parts. This clause is binding on defendant. 98 Ark. 482; 75 *Id.* 206.

2. Contracts by telegrams and letters are upheld by the courts, and it is their duty to interpret them and declare the terms. 200 S. W. 795; 77 *Id.* 261; 89 *Id.* 239.

3. Appellant by failing to comply with the clause in the contract waived any breach. But there was no breach of the contract by appellee. After hearing the proof and especially reading the letters of defendant, after he became aware of the shortage in the shipment, the court was justified in ordering a verdict. 98 Ark. 482; 75 *Id.* 206.

WOOD, J., (after stating the facts). The ruling of the court was correct in instructing the jury to return a verdict in favor of the appellee. Appellant was bound under the terms of his contract to "immediately notify appellee on the receipt of the silo if any part or parts were lacking or defective." He was to allow a reasonable time for replacing such shortage or defective part. A failure to comply with the above terms on the part of appellant was to be deemed acceptance of the silo. The appellant failed to comply with the above provisions of the contract as shown by the correspondence and the oral testimony in the record.

The rule is that, where the trial court has directed a verdict, this court on appeal will give the testimony its strongest probative force in favor of the party against whom the verdict was rendered. Applying that rule here,

we are convinced that there has been no breach of the
contract on the part of the appellee, and that appellant
failed, as before stated, to comply with its terms. While
the undisputed evidence shows that the appellee did not
ship to the appellant the silo which he ordered, yet the
proof is, as shown by the appellant's own letters to the
company, that he never notified the appellee what par-
ticular part or parts were lacking. His letter of August
5, in which he claims to have given notice to the company
as soon as he discovered the mistake in the shipment,
does not specify what part or parts the appellee had
failed to ship in order to carry out its contract and make
the silo complete. The letter, however, does carry the
necessary implication that the silo would have been com-
plete if the pieces had not been short, thus showing that
at the time this letter was written appellant was making
no complaint to the effect that the appellee's failure to
carry out its contract was because of its shipment of a
16 by 40 silo, instead of a 20 by 40 silo.

It was the duty of the appellant under the contract,
when he ascertained that appellee had failed to ship a silo
of the dimensions called for by the terms of the contract,
to immediately notify the appellee of that fact. A fail-
ure to ship the whole silo of the dimensions called for
was, of course, a failure to ship any part or parts as des-
ignated in the contract. If appellant had given imme-
diate notice to the appellee that it had shipped a 16 by 40
silo instead of a 20 by 40, then it was plainly appellee's
duty to have complied with its contract by shipping the
20 by 40 silo. But even if it be conceded that the undis-
puted testimony shows that appellant gave to the appel-
lee immediate notice after he discovered the defect or
shortage that the shortage consisted in the failure to ship
a 20 by 40 silo as the contract contemplated, then the un-
disputed evidence shows that the appellee complied with
its contract by shipping all the lacking parts of which
appellant had given it notice.

As we gather from the testimony and the bill of lad-
ing of July 25, 1914, the company fully complied with its

contract in shipping to the appellant the necessary lacking parts to complete the silo of which appellant had given it notice. The letters of appellant to appellee clearly show that, after he knew of the mistake on the part of the appellee in first shipping a silo not specified in the contract, and after he knew that the appellee had shipped the part or parts which it believed necessary under the notice received to complete the silo according to the contract, he nevertheless offered to pay for the silo, provided the company would extend the time for the payments.

We conclude that the undisputed evidence shows that there was no breach of the contract upon the part of the appellee, but if we are mistaken in this, and if there was a technical breach of the contract on the part of the appellee, it is certain that the appellant waived such breach and accepted the shipments made by the appellee as a full compliance with its contract. Therefore, the trial court was correct in ruling that appellant was liable as a matter of law, and in instructing the verdict in favor of the appellee. The judgment is, therefore, affirmed.